UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BOBBY LAWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | 3:07-CV-299 |
| ) | (PHILLIPS / SHIRLEY) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 9 and 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12]. Plaintiff also filed a reply to Defendant's Motion for Summary Judgment [Doc. 13]. Plaintiff Bobby Lawson seeks judicial review of the decision of the Administrative Law Judge, the final decision of Defendant Commissioner.

On March 5, 2004, Plaintiff filed an application for disability insurance benefits (Tr. 37-39). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing (Tr. 26-31). On June 20, 2006, a hearing was held before an ALJ to review determination of Plaintiff's claim (Tr. 467-89). At the hearing, the ALJ heard testimony from Plaintiff and Anne Thomas, a vocational expert ("VE"). On November 28, 2006, the ALJ found that Plaintiff was not disabled because he remains capable of performing light work subject to additional limitations (Tr. 16). The

Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ Findings**

The ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: diabetes mellitus, hypertension, arthritis, chronic obstructive pulmonary disease, depression, glaucoma, and emphysema (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets to medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to light exertion with the following additional limitations: preclude the climbing of ladders, ropes, scaffolds, occasionally climbing stairs, ramps, avoid, stooping, bending to waist, floor, climbing, crawling, no extreme temperatures, excessive humidity or environmental changes and no more than simple repetitive non-detailed tasks.
>
> 6.   The claimant is unable to perform any past

relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 23, 1952 and was 49 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The claimant has not been under a "disability", as defined in the Social Security Act, from December 1, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-19).

## II.   Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall

be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent his from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

### IV. Analysis

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ committed the following errors: (A) failed to give controlling weight to the opinion of Dr. Sewell, his treating physician; (B) ignored the opinion of consultative examiner, Dr. Johnson, regarding Plaintiff's exertional limitations; (C) finding Plaintiff does not follow his doctors' medical advice to lose weight, take medications, and stop smoking; and (D) found Plaintiff less than credible [Doc. 10]. Plaintiff further contends a reversal of the Commissioner's decision and remanding for re-hearing is proper since the ALJ did not adequately

articulate key findings with specific evidence and ignored Plaintiff's obesity diagnosis. The Commissioner, in response, contends substantial evidence supports the ALJ's finding of non-disability and any arguments to the contrary must fail [Doc. 12]. Plaintiff bears the burden of proving his entitlement to benefits. Boyers v. Sec. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

*A.      Treating Physician*

Plaintiff's first assertion of error is that the ALJ improperly weighed the opinion of his treating physician, Dr. Sewell. The opinions of treating physicians are generally entitled to greater weight than those of non-treating physicians. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985); 20 C.F.R. § 404.1527(d). In fact, the ALJ must at least give a treating physician's opinion substantial deference, and if the opinion is not contradicted, the ALJ must give it controlling weight. Lancaster v. Comm'r of Soc. Sec., 228 Fed. Appx. 563, 576 (6th Cir. Apr. 26, 2007). However, if controlling weight is not accorded the opinion of a treating source, the ALJ must give good reasons for discounting that opinion to the following regulatory factors governing the weighing of such evidence: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the nature and extent of relevant evidence that the treating physician presents supporting his opinion, consistency of the opinion with the record as a whole, and the treating physician's specialization. 20 C.F.R. § 416.927(d)(2)-(5); see also Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

Dr. Sewell has been Plaintiff's treating physician since 2001 (Tr. 359-95). During that time, Dr. Sewell saw Plaintiff no less than twenty-five times (Id.) with regard to a variety of complaints, including, but not limited to, sleep apnea (Tr. 360), leg and feet swelling (Tr. 362-63), aching joints

6

(Tr. 368), type II diabetes mellitus (Tr. 371), coughing (Tr. 377-78), hypertension (Tr. 381), glaucoma (Tr. 378-83), and chronic hypoxia (Tr. 386). In light of these ailments, Dr. Sewell advised that Plaintiff was able to frequently lift/carry less than ten pounds; stand/walk less than two hours in an eight hour workday; and sit less than six hours in an eight hour workday (Tr. 435-36). Furthermore, Dr. Sewell found Plaintiff's ability to push/pull is limited in both his upper and lower extremities, and can only occasionally climb, balance, kneel, crouch, crawl, and stoop (Tr. 436). As for manipulative limitations, Dr. Sewell stated Plaintiff was limited in his ability to reach in all directions and unlimited in handling, fingering, and feeling (Tr. 437). Furthermore, Dr. Sewell noted Plaintiff is limited in his ability to see, and should limit his exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases (Tr. 437-38). Dr. Sewell advised the following medical/clinical findings supported his conclusions: morbid obesity, type II diabetes mellitus, back pain, osteoarthritis, severe chronic sleep apnea, COPD, chronic hypoxnia, hypertension, glaucoma, hiatal hernia, and nicotine abuse (Tr. 436).

The ALJ accorded no weight to Dr. Sewell's opinion, stating Dr. Sewell "cannot support his claim [that Plaintiff is disabled at less than sedentary exertion] with specific findings" (Tr. 17). Aside from citing Dr. Sewell's treatment notes for the proposition that "[s]tudies revealed normal bilateral lower extremity non-invasive arterial evaluation", Dr. Sewell's opinion is barely mentioned by the ALJ. The ALJ did not "set forth some basis for rejecting" the opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987). While an administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality," Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted), at the same time, a reviewing court cannot deem an error harmless solely because the claimant "appears to have had

7

little chance of success on the merits anyway." Id. at 546 (citation omitted). Instead, the court must be able to discern at least some indirect support for the challenged rejection of a pertinent opinion, such as: (1) the medical opinion was so patently deficient that no reasonable fact-finder could have credited it; (2) the ALJ elsewhere adopted the opinion; (3) an earlier decision by the ALJ adequately addressed the issue; or (4) the ALJ's reasoning could be inferred from his overall discussion of the condition. Id. at 547.

The Court finds none of these circumstances present in this case. Dr. Sewell's opinion is not "patently deficient". The ALJ did not elsewhere adopt Dr. Sewell's views nor was there a prior adjudication where the opinion was adopted. Lastly, the reasoning for rejecting Dr. Sewell's opinion cannot be discerned from the ALJ's overall discussion. While the ALJ discussed some of Plaintiff's ailments in conjunction with the objective medical evidence of record (Tr. 16-17), the ALJ failed to explain fully explain his rejection of Dr. Sewell's opinion to this Court's satisfaction. See Shelman, 821 F.2d at 321. The Commissioner argues that "Dr. Sewell's extreme opinion plainly is not supported by objective evidence," [Doc. 12 at 12], and while that may be the case, this Court finds that the ALJ failed to articulate how the objective evidence does not support Dr. Sewell's opinion, thus, his decision to discount the opinion is not supported by substantial evidence in the record and must be reversed and remanded for further evaluation and articulation.

### B. *Consultative Examiner*

Plaintiff next argues that the ALJ erred in ignoring the opinion of Dr. Johnson, a consultative examiner, regarding his exertional limitations. The Commissioner, in response, argues that Dr. Johnson's opinion is consistent with the ALJ's finding that Plaintiff is capable of performing light work.

Dr. Johnson's assessment included the "following factors related to employment:" (1) Morbid obesity; (2) COPD, "[b]reath sounds are moderately decreased. He does become moderately short of breath with exertion today."; (3) "Bilateral knee pain, left greater than right. He has a moderate left-side limp. He has mildly reduced range of motion in the left knee. He does have 1+ soft tissue swelling in the left knee."; and (4) "Left calf swelling of undetermined etiology." (Tr. 296). Regarding work recommendations, Dr. Johnson stated that Plaintiff should be able:

> To sit for more than six hours during an eight-hour work day ... stand for three hours during an eight-hour day or walk for two hours during an eight-hour day although not on a continuous basis. He should be able to routinely lift 15 pounds and occasionally lift 25 pounds.

(Tr. 297).

According to the Social Security Regulations, sedentary work is defined as "involving no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. ... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). On the other hand, light work is defined as " involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. ... a job is in this category when it requires a good deal of walking or standing, or <u>when it involves sitting most of the time</u> with some pushing and pulling of arm or leg controls." Id. at § 404.1567(b) (emphasis supplied).

In reviewing Dr. Johnson's work recommendations in conjunction with the applicable regulations, this Court agrees with the Commissioner than Dr. Johnson's overall recommendation is consistent with the regulatory definition of light work, which the ALJ ultimately found Plaintiff capable of, subject to certain limitations. As such, the ALJ did not disregard the Dr. Johnson's

9

opinion as Plaintiff claims. Plaintiff's argument that light work "requires standing or walking, off and on, for a total of approximately six hours or an eight-hour workday" [Doc. 10 at 11], fails to acknowledge the entire language of the regulation, which takes into account that work may fall into the category of "light" when if sitting for most of the time, pushing or pulling is required. 20 C.F.R. § 404.1567(b). Accordingly, Dr. Johnson's recommendation, which states that Plaintiff "should be able to sit for more than six hours during an eight-hour work day ... [and] stand for three hours during an eight-hour day or walk for two hours during an eight-hour day" (Tr. 297) supports the ALJ's light work determination and provides substantial evidence for the determination. Accordingly, this Court need not address Plaintiff's argument that the ALJ should have used the Medical-Vocational Guidelines (the Grid).

### C. *Failure to Follow Medical Advice*

Plaintiff next argues that the ALJ erred in finding that he fails to follow the medical advice of his doctors in regard to losing weight, taking medications as prescribed, and quitting smoking. Regarding Plaintiff's failure to monitor his diet, take his medications, and quit smoking the ALJ stated:

> The claimant complains of chronic obstructive pulmonary disease. However, the claimant continues to smoke against medical advice. In addition, the claimant suffers from diabetes mellitus. The claimant's sugar levels are not controlled. The claimant has been educated in diet and medications yet he continues to go against medical advice.

(Tr. 17).

The Sixth Circuit has stated that the "Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, ... have consequences." Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988).

With this principle in mind, the Court considers Plaintiff's objections.

As an initial matter, the Court notes that the ALJ spoke of Plaintiff's "educat[ion] of diet and medications" in connection with his diabetes mellitus (Tr. 17). The ALJ found Plaintiff's "sugar levels are not controlled ... [but Plaintiff] continue[d] to go against medical advice" (Id.). The Court finds the ALJ did not err in considering Plaintiff's personal behavior towards his treatment plans in making his determination, thus substantial evidence supports his finding.

In October 1997, Dr. Larry Wolfe "encouraged" Plaintiff to "lose weight and become more active ... all these factors lead to Insulin resistance" (Tr. 188). On November 19, 2002, Plaintiff complained to Dr. Sewell of redness in the left eye, but had not taken his drops for his glaucoma and had not been to the eye doctor in some time and Dr. Sewell noted he and Plaintiff "discussed his weight gain today as well" (Tr. 386). On June 16, 2003, Plaintiff advised Dr. Sewell he was "not watching his diet very closely" and Dr. Sewell "counseled on weight loss and diet" (Tr. 383). On September 15, 2003, Dr. Sewell "again reminded [Plaintiff] to see the eye doctor" and "counseled on weight loss and diet" (Tr. 378). On July 19, 2004, Dr. Sewell again "counseled [Plaintiff] on diet and exercise" in connection with his type II diabetes mellitus (Tr. 368). On November 8, 2004, Plaintiff visited Dr. Sewell for a check-up and while his "sugars [were] ... improved somewhat", Dr. Sewell noted Plaintiff "had not seen the eye doctor" and that he again discussed with Plaintiff about his compliance with treatment and risk of blindness (Tr. 360).

In light of Dr. Sewell's treatment notes, the Court finds the record is replete with instances of Plaintiff failing to follow medical advice on ways to control his medical ailments, whether it be instances of him failing to take medication, failing to schedule appointments with recommended specialists, and failing to control his diet. The Court recognizes that it "is not entitled to presume[]

11

that obesity is remediable or that an individual's failure to lose weight is willful." Harris v. Heckler, 756 F.2d 431, 435-36 n. 2 (6th Cir. 1985). However, the record shows Plaintiff's doctor had to continually remind him that watching his diet and trying to lose weight was part of his treatment plan, instead of noting that Plaintiff had tried to lose weight and was successful or unsuccessful or even that he understood the importance of this part of his treatment plan. In light of the medical evidence, the Court finds Plaintiff's lifestyle "is utterly inconsistent with that of a person who suffers from the limitations alleged." Shepperd v. Astrue, 2008 WL 56931 at * 13 (E.D.Tenn. Jan. 3, 2008). Therefore, the ALJ did not err in considering Plaintiff's failure to monitor his diet and take his prescribed medications in making his overall disability determination.

In regard to Plaintiff's smoking, the record is even more complete with numerous notations by Dr. Sewell advising Plaintiff to stop smoking (See Ex. 11F, Tr. 358-433; see also Tr. 188; 292). Plaintiff even admits in his brief that Dr. Sewell's treatment notes "regularly state that Plaintiff continues to smoke despite advice to the contrary" [Doc. 10 at 13]. Thus, the ALJ's incorporating Plaintiff's continued smoking into his overall disability determination is supported by substantial evidence, and thus, the ALJ did not commit error.

### D. *Credibility*

Plaintiff next argues that the ALJ erred in finding his testimony less than credible and failed to fully explain the credibility finding in his opinion pursuant to the Sixth Circuit's directive in Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 248 (6th Cir. 2007). Plaintiff further contends the ALJ's discredited his testimony because he is a smoker and failed to explain how his continuing to smoke made him less credible.

Social Security Ruling 96-7p requires the ALJ to explain his credibility determinations in

12

his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Furthermore, SSR 96-7p requires the ALJ to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p was designed to prevent ALJs from making adverse credibility determinations unsupported by substantial evidence or premised on flawed logic. Indoranto v. Barnhart, 374 F.3d 470, 474-75 (7th Cir. 2004).

In this case, the Court finds the ALJ failed to connect the evidence before him with his credibility conclusion. As discussed above, the ALJ failed to fully discuss and analyze the medical opinions and treatment notes of Dr. Sewell reflecting his judgments about the nature and severity of Plaintiff's impairment. Since the regulations require the ALJ to evaluate subjective complaints of pain in conjunction with the objective medical evidence, this Court finds the ALJ's rationale as to why Plaintiff's complaints are not credible is not supported by substantial evidence. The Court is unable to tell whether the ALJ investigated all avenues that relate to Plaintiff's complaints of pain because the decision offers no guidance as to whether he examined the full range of medical evidence as it relates to this claim.

The Court makes no ruling as to whether or not Plaintiff is credible, but only finds remand is necessary to allow for meaningful review by the Court of the ALJ's credibility determination.

*E.  Obesity*

Plaintiff's final argument contends that the ALJ erred in failing to consider his morbid

obesity in determining his RFC. Plaintiff contends that the ALJ committed error by failing to follow the procedure outlined in Social Security Ruling 02-01p. However, the Sixth Circuit has stated that "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." Bledsoe v. Barnhart, No. 04-4531, 2006 WL 229795, at * 3 (6th Cir. Jan. 31, 2006). Furthermore, the Sixth Circuit has stated that "it is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." Id.

This Court does not dispute that the Sixth Circuit recognizes "that obesity can cause a person to be disabled, especially when in concert with other factors." Johnson v. Sec'y of Health & Human Servs., 794 F.2d 1106, 1112-14 (6th Cir. 1986). However, this Court reminds Plaintiff of the language of 20 C.F.R. § 404.1512(a), which states that the Social Security Administration will consider impairments "you say you have or about which we receive evidence." In this case, Plaintiff asserts that because his medical reports indicated he suffered from obesity, the ALJ was required to consider it as a possible impairment. The Court notes Plaintiff's treating physician, Dr. Sewell, noted Plaintiff's obesity could potentially exacerbate his other impairments (Tr. 438). Since the ALJ did not fully explain his rejection of Dr. Sewell's opinion to this Court's satisfaction, as discussed above, the Court further finds the ALJ's failure to discuss Plaintiff's obesity in his opinion was also in error. Therefore, on remand, the ALJ will also consider whether or not the record supports Plaintiff's contention that his obesity affects his other impairments so much as to affect his RFC.

## V. Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Judgment on the Pleadings [Doc. 9] be **GRANTED** to the extent that it seeks remand under sentence four of 42 U.S.C. 405(g) and the Commissioner's Motion for Summary Judgment [Doc. 11] be **DENIED**. It is further **RECOMMENDED** that the Commissioner's decision be **REVERSED**, and that this matter be **REMANDED** for further evaluation consistent with the Court's analysis outlined above.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).